## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Thomas Evenstad, | Case No. 20-CV-0722 (JRT/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| SERT Deputy Kasparek and SERT Deputy Marshall, | |
| Defendants. | |

This matter is before the Court on Defendants' Motion for Summary Judgment or, in the Alternative, Motion to Dismiss for Lack of Prosecution (Dkt. 46) ("Motion"). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends the Motion be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Allegations and Relief Sought in Plaintiff's Complaint

Plaintiff Thomas Evenstad ("Evenstad" or "Plaintiff") initially named Richard Stanek, the Hennepin County Sheriff's Department, Deputy Lisa Kasparek, Deputy Jeffrey Marshall, the State of Minnesota, and the County of Hennepin as Defendants in this action alleging violations of "his First Amendment rights to redress grievances; his right to Due Process of the Law protected under the Fifth Amendment; his right to be free from cruel and unusual punishment under the Eighth Amendment; and his right to equal protection of the Law under the 14th Amendment." (Dkt. 1 at 1.)

The Complaint alleges as follows: On March 14, 2014, Evenstad drove to the home of Richard Stanek, who was at that time the Hennepin County Sheriff, and knocked on his door in order to address Stanek's public position in opposition to the legalization of the medicinal use of cannabis and the incompetence leading to the drowning deaths of multiple persons. (*Id.* at 2-3 ¶ C.) Stanek's wife told him that Stanek was not at home, and Evenstad then left the residence. (*Id.* at 3 ¶ C.)

When Evenstad returned home to his residence on the same day, he observed two marked Hennepin County Sherriff's Office ("HCSO") squad vehicles in front of his residence, which caused Evenstad fear and anxiety due to the possible threat of retaliation. (*Id.* at 3 ¶ D.)

Evenstad drove away and consulted with his attorney on how to proceed. (*Id.* at 3 ¶ E.) Evenstad's attorney notified him of the danger that law enforcement may be angry with him for going to Stanek's home and advised him not to return to his home for the weekend. (*Id.* at 3-4 ¶ F.) It was ultimately decided that Evenstad would return to his home with his father as a witness. (*Id.* at 4 ¶ G.)

When Plaintiff returned to his residence, deputies stopped directly in front of the Plaintiff's vehicle. (*Id* at 4 ¶ H.) The deputies exited their squad vehicle with their service weapons drawn, and Deputy Kasparek, aiming her gun directly at Plaintiff, yelled "freeze motherfucker!", "[s]how me your hands!", and "[d]on't move, or I'll blow your fucking head off!", and told him to "[o]pen the fucking door now, or I'll blow your head off!" (*Id.* at 4-5, ¶ I.) Plaintiff was forcibly removed from the vehicle by Deputy Marshall, who forcibly shoved Evenstad to the front of his vehicle while screaming that

2

Plaintiff was under arrest. (*Id.* at 5 ¶ J.) Deputy Marshall also used unnecessary force in securing Evenstad when she applied "pain techniques" in handcuffing Plaintiff, who complied fully with the arrest process and offered no resistance. (*Id.* at 1, 5 ¶ J.)

During the arrest, Deputies Kasparek and Marshall verbally abused Plaintiff and shouted racial epithets about Bob Marley, a picture of whom was on Plaintiff's shirt. (*Id.* at 1, 5-6 ¶ J.)

After Plaintiff was handcuffed, Deputy Marshall yelled at him about coming "to our houses" and then used his closed fist to hit Evenstad three times in the head with maximum force while Plaintiff was handcuffed, causing him extreme amounts of pain. (*Id.* at 2, 6, ¶ J.) Plaintiff was placed into a squad car and when he screamed at the top of his lungs for help, as a result of his arrest, Deputy Marshall shoved something into his mouth to prevent him from doing so. (*Id.* at 6 ¶ L.)

Plaintiff requested transport to a hospital for evaluation and treatment for the injuries he suffered from Deputy Marshall, but his request was denied by unidentified person(s). (*Id.* at 2, 6-7 ¶ M.)

Once Plaintiff arrived at jail, he reported his assault to the HCSO deputies and the jail's nursing staff, who laughed at him, asserting that law enforcement does not assault people. (*Id.* at 7 ¶ N.) Plaintiff asked an officer to document and photograph his injuries, and the request was granted. (*Id.*)

Plaintiff was sent to Hennepin County Medical Center ("HCMC") shortly after being jailed. (*Id.* at 7 ¶ O.)

As a result of Deputies Kasparek and Marshall's actions, Evenstad suffered a severe head injury, which resulted in migraines that he continues to suffer from, along with mental health issues. (*Id.* at 7-9 ¶ P.) Plaintiff characterizes the use of force as excessive. (*Id.* at 8 ¶ P.)

Evenstad asserts that the assault was in retaliation for his exercise of his First Amendment right to seek redress of grievances of governmental officials, in this case his grievance against former Sheriff Stanek. (*Id.* at 8 ¶ Q.)

Evenstad further asserts that the conduct was also in violation of his right to due process of the law, to be free from cruel and unusual punishment, to have the equal protection of the law, and to pursue a redress of grievances found in the First, Fifth, Eighth, and Fourteenth Amendments of the Constitution. (*Id.* at 8 ¶ Q.)

Evenstad asserts that Hennepin County and the Hennepin County Sheriff's Department are liable for the conduct of former Sheriff Stanek and Deputies Kasparek and Marshall, "for it is through Minnesota State Law that directs the Counties and Law enforcement Agencies with the State of their duties." (*Id.* at 8 ¶ R.)

Evenstad asserts his lawsuit as follows as to the Defendants:

Against Defendants [sic] Stanek in his official capacity.

Against both Defendants Kasparek and Marshall in their individual and official capacities while seeking monetary damages against both in their individual capacities, in excess of $50,000.

(*Id.* at 8-9.)

Plaintiff also seeks an order for protection enjoining Defendants from further retaliation for pursuing redress of grievance in the form of this action. (*Id.* at 9.)

**B.    Subsequent Action by the Court and Motion Practice related to the Complaint**

On June 6, 2020, the Court issued a Report and Recommendation dismissing the State of Minnesota and the Hennepin County Sheriff's Department from this action. (Dkt. 10.) The Court also substituted David Hutchison for Stanek, as the acting Hennepin County Sheriff.  Plaintiff did not object to this Report and Recommendation, which was adopted by then-Chief United States District Judge John R. Tunheim.  (Dkt. 19.)

Defendants subsequently brought a Motion to Dismiss.  (Dkt. 22.)  On January 12, 2021, the Court issued a Report and Recommendation, which recommended granting the motion and dismissing all claims against Hennepin County; dismissing all claims against Sheriff Hutchinson, Deputy Kasparek, and Deputy Marshall in their official capacities; and dismissing Plaintiff's Eighth Amendment claim and Equal Protection claim under the Fourteenth Amendment against Deputy Kasparek and Jeffrey Marshall in their individual capacities.  (Dkt. 33 at 12-13.)  Again, Evenstad did not object, and then-Chief Judge Tunheim adopted the Report and Recommendation on February 8, 2021.  (Dkt. 34.)

The only claims remaining in this action are the First and Fifth Amendment claims against Deputies Kasparek and Marshall in their individual capacities.  (*Id.* at 13.)

**C.    Discovery Deadlines**

The Court issued a Pretrial Scheduling Order for this case on April 22, 2021. (Dkt. 40.)  Pursuant to this Order, the parties' respective Rule 26(a)(1) initial disclosures were due on or before May 20, 2021.  (*Id.* at 3.)  The parties were also required to

commence fact discovery procedures in time to be completed on or before January 14, 2022. (*Id.*)

## D.    Present Motion

Defendants have moved for summary judgment pursuant to Rule 56, and or in the alternative, Rule 41 for failure to prosecute, and seek dismissal of all remaining claims against Defendants. (Dkt. 46.) To date, Plaintiff has not responded to this Motion.

## II.    FACTUAL BACKGROUND

## A.    Facts Defendants are Relying on for the Purposes of Summary Judgment[1]

On March 14, 2014, Deputies Kasparek and Marshall (collectively, "Deputies") were dispatched to a suspicious person call for Stanek's residence. (Dkt. 49 ¶ 3; Dkt 50 ¶ 3.)[2] At approximately 5:22 p.m., the Deputies spoke with Stanek's wife, who stated that she had arrived at her home at about 5:00 p.m. when she heard a banging at her front door, and when she went outside through her garage, she observed Evanstad at the front door. (Dkt. 49 ¶¶ 4-5.) Ms. Stanek also observed an older maroon vehicle in her driveway. (*Id.* ¶ 5.)

---

[1]    As argued by Defendants, Plaintiff failed to serve responses to Defendants' Requests for Admissions (Dkt. 51-3 at 15-20), which contain requests for admission of facts consistent with those asserted by the Deputies in their declarations regarding the operative events in this case, and therefore they are deemed admitted as evidence. *See* Fed. R. Civ. P. 36(a)(6); *Quasius v. Schwan Food Co.*, 596 F.3d 947, 951 (8th Cir. 2010).

[2]    The Court notes that Plaintiff has not objected to the content of Defendants Deputy Kasparek and Deputy Marshal's Declarations. *See Williams v. Evangelical Retirement Homes*, 594 F.2d 701, 703 (8th Cir.1979) (per curiam) ("The general rule is that defects in the form of the affidavits are waived if not objected to at the trial court level."); *see also True v. Nebraska*, 612 F.3d 676, 683 (8th Cir. 2010).

Plaintiff stated that he needed to speak with Stanek. (Dkt. 49 ¶ 6.) After Ms. Stanek told Plaintiff that Stanek was not available, she asked Plaintiff to leave and informed him their residence was private property. (Dkt. 49 ¶ 6.) Plaintiff stated, "I'm waiting here" and recorded their conversation on his cellular phone. (*Id.* ¶ 6.) Plaintiff then began speaking in a rambling manner about a number of topics which he believed Stanek was responsible, including Plaintiff's sister being raped and marijuana. (*Id.* ¶ 7.) Plaintiff stated that he was holding "them" responsible for nothing being done about his sister's rape. (*Id.*) Ms. Stanek was afraid for the safety of herself and her daughter who also lives at the residence. (*Id.* ¶ 9; Dkt 50 ¶ 3.) Plaintiff's manner changed quickly from calm to irate and his speech was very aggressive, repeatedly saying he was not going to leave and would wait at the residence for Stanek to arrive. (Dkt. 49 ¶ 9.) Ms. Stanek stated that she became very afraid as Plaintiff was not leaving and continuing to stand at her door, saying he would wait for Stanek, as Plaintiff's voice escalated as he explained why he was so upset with Stanek, saying that Stanek ruined his life. (*Id.* ¶ 10.)

Plaintiff identified himself to Ms. Stanek, who finally convinced Plaintiff to leave, and afterwards quickly went into her home and locked the doors as she felt threatened. (*Id.* ¶¶ 8, 11.)

According to Deputy Marshal, routine checks by law enforcement identified Plaintiff's vehicle as a maroon 2001 Mercury Marquis, MN License 494XXX. (*Id.* ¶ 12.) Through further checks, Deputy Marshal asserted that law enforcement learned that Plaintiff was a convicted sex offender. (Dkt. 49 ¶ 13.)

While learning of Plaintiff's past criminal sexual conviction, the deputies were also able to learn that Plaintiff had listed his home address as a residential address in Edina through a check of the Predatory Offender Registry, and learned that he had a residence in Edina, Minnesota. (*Id.* ¶ 13.) After arriving at the Edina residence, deputies were not able to make contact and learned from a neighbor that the woman who owned the residence rented the basement to Plaintiff. (*Id.* at ¶ 14.) Through further investigation, deputies learned that Plaintiff's father lived at an apartment in Edina. (*Id.* ¶15.) After arriving at Plaintiff's father's address, deputies identified Plaintiff's vehicle via the license plate and saw a person sitting in the driver's seat. (*Id.*) Deputies conducted a felony-style stop on Plaintiff in which Plaintiff was removed at gunpoint. (*Id.* ¶ 16; Dkt. 50 ¶ 4.) Deputy Marshall ordered Plaintiff out of the vehicle. (Dkt. 49 ¶ 17.) Plaintiff did not initially comply with Deputy Marshall's orders to either unlock his car door or remove his seatbelt. (*Id.*)

Once Plaintiff was removed from his vehicle by Deputy Marshall, he was handcuffed and immediately began screaming loudly as if he was being hurt, although nothing had occurred to cause him injury. (*Id.*; Dkt. 50 ¶ 5.) Deputy Marshall searched Plaintiff incident to the arrest and put him into the rear of the squad car. (Dkt. 49 ¶ 17.)

Shortly after, Plaintiff's father came down to speak with deputies about his son and was permitted to speak with Plaintiff through the squad window. (*Id.* ¶ 18.) After a very short conversation with his son, Plaintiff's father asked the Deputies to loosen his son's handcuffs. (*Id.*) Deputy Marshall immediately adjusted Plaintiff's handcuffs as requested, and again Plaintiff began screaming as if he was being hurt. (*Id.*)

Both Deputies represented in their respective Declarations that at no time did they strike Plaintiff, place anything in Plaintiff's mouth, or make any racist or disparaging comments. (*Id.* ¶¶ 22-26; Dkt. 50 ¶¶ 7-11.)

On the day of the incident, "[o]ther deputies transported Plaintiff to the Hennepin County Jail for booking on Terroristic Threats." (Dkt. 49 ¶ 20.) The March 17, 2014 Felony Criminal Complaint against Plaintiff charged him with two counts of the offense of making terroristic threats in violation of Minnesota Section 609.713.1. (Dkt. 25-1 at 2.) The statement for probable cause for the criminal complaint provided as follows:

> THOMAS WAYNE EVENSTAD, DOB: XXXX is well known to State Patrol Troopers who work at the Minnesota State Capitol. Evenstad had been noted by law enforcement attending public meetings and hearings that related to the state sex offender treatment program. At a hearing (related to cell phone tracking) during the week of 03-09-2014, Evenstad became very hostile during the hearing and confronted a BCA Assistant Superintendent, who believed that Evenstad would become physical. The interaction was witnessed by the BCA Superintendent and an Assistant Commissioner of Public Safety. Evenstad made numerous calls to the BCA during that week and his behavior and demeanor became increasingly concerning to BCA staff.
>
> During the same week, Evenstad also called the Governor's Residence on more than one occasion wishing to meet with the governor regarding medical marijuana.
>
> On the afternoon of 03-14-2014, Evenstad appeared at the Governor's Residence. Via intercom, Evenstad spoke with a trooper and demanded to see the governor. When he was told that that was not going to happen and that he would not be allowed beyond the locked metal gate, Evenstad left.
>
> On 03-14-2014 at about 5:20 pm, Evenstad appeared at the suburban Hennepin County home of Sheriff Rich Stanek. While Sheriff Stanek was not home, his wife, SRS, was present. Mrs. Stanek went to the door and noted a vehicle parked askew in the driveway. Evenstad identified himself, was oddly dressed and clearly agitated. He demanded to see Sheriff Stanek and, when told that the sheriff was not home, Evenstad indicated he would wait.

As Mrs. Stanek attempted to find out what Evenstad wanted, she noted that his demeanor would change quickly from calm to irate, his voice growing very loud. Evenstad indicated that his presence had something to do with his sister having been raped, nothing having been done, and that he felt Stanek was responsible. Evenstad added that Stanek had somehow ruined his life. Evenstad initially refused to leave when directed by Mrs. Stanek, and then eventually[sic] left. Mrs. Stanek found Evenstad's presence threatening. Evenstad is 6'2" tall and 200 pounds.

At about 5:34pm that same day, the doorbell rang at the suburban Hennepin County home of an Assistant Hennepin County Attorney. While the prosecutor was not home, his wife, DLS, and children were present. The prosecutor's wife answered the door and found Evenstad, who her husband had prosecuted for Criminal Sexual Conduct in the First Degree in 1999. Evenstad received a 139 month prison sentence for that crime. Officials had also civilly committed Evenstad following his release from prison. Evenstad told the prosecutor's wife that he had been wrongfully convicted and that he was there to "let him (the prosecutor) make things right." The prosecutor's wife felt threatened by Evenstad's presence and demeanor. She said she was afraid for herself and her children. He left when the prosecutor's wife said she was calling 911.[3]

Although his Minnesota Driver's License indicated an address in Mound, as a convicted predatory offender, Evenstad is required to register his address with the BCA. That registration indicated an address in Edina.

Officers went to the Edina address but Evenstad was not present. They went to his father's nearby apartment and, while checking the parking lot, found Evenstad sitting in his vehicle. He was arrested and immediately began screaming. His father arrived and spoke with officers, who allowed the father to speak with Evenstad. The father then asked officers to loosen Evenstad's handcuffs, which they did. Evenstad again began screaming as though being physically harmed. Officers noted that, while dealing with Evenstad, his demeanor would change mid-sentence, going from quiet and calm, to screaming and irate.

---

[3]    It is not apparent from the Deputies' Declarations that they knew about Plaintiff's contact with the county attorney's home on the same date, as they do not attest that they were aware of this event at the time of Plaintiff's arrest. Defendants have not explained why Evenstad's conduct at the prosecutor's house has any bearing on their arrest of Evenstad, and the Court does not consider it for purposes of probable cause for the warrantless arrest of Plaintiff in Section IV.A.1 of this Report and Recommendation.

When an investigator attempted to interview Evenstad, he refused, then began screaming as the investigator left.

In addition to his 1999 convictions for Criminal Sexual Conduct First and Third Degree, Evenstad has prior felony convictions for Drug 2 and 3 (Carver County, 1993)[.]

(Dkt. 25-1 at 3-4.)  Hennepin County District Judge Robert M. Small found probable cause for Plaintiff's arrest and the charges asserted.[4]  (*Id.* at 6.)

## B.    Facts Relevant to the Motion to Dismiss for Failure to Prosecute

As of the date of Defendants' Motion, Plaintiff had not served his Rule 26(a) disclosures (Dkt. 51 ¶ 5), which were due on May 20, 2021 (Dkt. 40 at 3).  Defendants served Plaintiff with written discovery, including interrogatories, request for production of documents, requests for admissions, and requests for Plaintiff to authorize the release of information by third parties on December 7, 2021.  (Dkt. 51 ¶ 6, Dkt. 51-3.)  Plaintiff had not responded to Defendants' discovery as of the date Defendants filed their Motion. (Dkt. 51 ¶ 7.)

On July 29, 2022, Defendants brought the present Motion.  (Dkt. 48.)  As stated previously, Plaintiff has not responded to the present Motion.

---

[4]    The Court also notes that there was an amended criminal complaint (not relied on by Defendants on Summary Judgment), asserting an addition charge of stalking, but there is no indication whether a judge found probable cause as to the amended criminal complaint.  (*See* Dkt. 25-2.)

### III.    LEGAL STANDARD

**A.    Summary Judgment Under Rule 56**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided.  *See Celotox Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  For a dispute about a material fact to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby*, 477 U.S. 248 (1986).  In its review of the facts, the Court must consider the evidence in the light most favorable to the party opposing summary judgment.  *See Kneibert v. Thomson Newspapers, Michigan, Inc.*, 129 F.3d 444, 451 (8th Cir. 1997).

When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial."  *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).  "In evaluating the evidence at the summary judgment stage, we consider only those responses that are supported by admissible evidence."  *Duluth News-Tribune v. Mesabi Publ'g Co.,* 84 F.3d 1093, 1098 (8th Cir. 1996); *see also JRT, Inc. v. TCBY Sys., Inc.*, 52 F.3d 734, 737 (8th

Cir. 1995) ("[A] successful summary judgment defense requires more than argument or re-allegation; [the party] must demonstrate that at trial it may be able to put on admissible evidence proving its allegations."). Indeed, Rule 56(c) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated" and a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2), (4).

When ruling on a motion for summary judgment, the Court is not required to adopt the plaintiff's version of the facts when those facts are "so 'blatantly contradicted by the record . . . that no reasonable jury could believe them." *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "A plaintiff may not merely point to unsupported self-serving allegations but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor' without resort to 'speculation, conjecture, or fantasy.'" *Id.* at 790-91 (citations and internal quotation omitted). When considering a motion to dismiss or for summary judgment, pleadings submitted by *pro se* litigants are held to less stringent standards than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, claims of even a *pro se* plaintiff cannot survive a motion for summary judgment unless the plaintiff has set forth specific facts demonstrating that there is a genuine issue for trial. *See Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987) ("Although Quam is entitled to the benefit of a liberal

13

construction of his pleadings because of his pro se status, Federal Rule of Civil Procedure 56 remains applicable to Quam's lawsuit.").

**B.    Motion to Dismiss Under Rule 41(b)**

Dismissal of an action with prejudice for failure to prosecute or comply with a court order is available to the Court under Rule 41(b) of the Federal Rules of Civil Procedure. *See Lunsford v. RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008) (citing *M.S. v. Wermers*, 557 F.2d 170, 175 (8th Cir. 1977)). This is a severe sanction that the court should be tempered by careful exercise of judicial discretion and should be imposed only after balancing the policy of giving the plaintiff their day in court against policies of preventing undue delay, avoiding court congestion, and preserving respect for court procedures. *Garrison v. Int'l Paper Co.*, 714 F.2d 757, 760 (8th Cir. 1983). The court should also consider factors such as "egregiousness of the plaintiff's conduct" and "adverse effect of the plaintiff's conduct on the defendant and on the administration of justice" must be taken into consideration in light of the circumstances when determining whether to dismiss the complaint. *Wright v. Sargent*, 869 F.2d 1175, 1176 (8th Cir. 1989) (quoting *Garrison v. Int'l Paper Co.,* 714 F.2d 757 (8th Cir. 1983)). Indeed, "[d]ismissal with prejudice is an extreme sanction and should be used only in cases of willful disobedience of a court order or continued or persistent failure to prosecute a complaint." *Givens v. A.H. Robins Co., Inc.*, 751 F.2d 261, 263 (8th Cir. 1984) (citation omitted); *see also Smith v. Gold Dust Casino*, 526 F.3d 402, 405 (8th Cir. 2008). Moreover, such dismissal may be deemed appropriate if there has been "a clear record of delay or contumacious conduct by the plaintiff." *Brown v. Frey,* 806

F.2d 801, 803-04 (8th Cir. 1986) (quoting *Haley v. Kansas City Star,* 761 F.2d 489,

491(8th Cir. 1985)).  "When determining whether or not to dismiss a case with prejudice

a district court should first 'consider whether any less-severe sanction could adequately

remedy the effect of the delay on the court and the prejudice to the opposing party.'"

*Smith v. Gold Dust Casino*, 526 F.3d 402, 406 (8th Cir. 2008) (quoting *Mann v. Baumer*,

108 F.3d 145, 147 (8th Cir. 1997)).

## IV.    ANALYSIS

### A.    Defendants' Motion for Summary Judgement

#### 1.    First Amendment Retaliation Claim

Defendants maintain that the existence of probable cause defeats any First

Amendment retaliation claim arising out of Plaintiff's arrest.  (Dkt. 48 at 13-14.)

Defendants also argue that a warrantless arrest is consistent with the Fourth Amendment

if it is supported by probable cause, and an officer is entitled to qualified immunity if

there is at least arguable probable cause.  (*Id.* at 13.)  Here, Defendants point to the fact

that at a minimum, they had arguable probable cause for Plaintiff's arrest for terroristic

threats under Minnesota Statutes Section 609.713.1 when they encountered him in his

vehicle on March 14, 2014.  (*Id.* at 14.)  In particular, Defendants rely on the following

facts:

> At the time of the encounter, the Deputies had been told by Mrs. Stanek that
> Plaintiff had come to her home uninvited, refused to leave when asked, made
> allegations suggesting he intended to hold the Stanek family responsible for
> Plaintiff's sister's rape, and becoming irate and aggressive in his manner of
> speech. Mrs. Stanek told the Deputies that she was very afraid when Plaintiff
> did not leave her home as requested and that when Plaintiff finally left she
> went inside and locked all the doors because she felt threatened and afraid.

(*Id.*)

The First Amendment prohibits governmental actors from directing what persons may see, read, speak, or hear. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002). For a plaintiff to establish a First Amendment retaliation claim under §1983 the plaintiff must satisfy three elements: (1) plaintiff engaged in a protected activity; (2) the government official took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *See Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002) (citations omitted). Additionally, the "'[l]ack of probable cause is a necessary element of' a First Amendment retaliatory arrest claim." *See Galarnyk v. Fraser*, 687 F.3d 1070, 1074 (8th Cir. 2012) (quoting *McCabe v. Parker*, 608 F.3d 1068, 1075 (8th Cir. 2010)).

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Even though a warrant is typically required for an arrest, there are exceptions. One is when there is probable cause to believe that an individual is committing a crime in the officer's presence." *United States v. Becerra*, 958 F.3d 725, 728 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 1081 (2021) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). "'To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" *United States v. Winarske*, 715 F.3d 1063,

1066 (8th Cir. 2013) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)); *see also*

*Webster v. Westlake*, 41 F.4th 1004, 1010 (8th Cir. 2022) ("Probable cause exists when

the totality of circumstances at the time of arrest would lead a reasonable person to think

the defendant committed or is committing a crime.") (citation omitted).  As recently

concluded by the Eighth Circuit:

> Officers "are not required to . . . have collected enough evidence so as to
> justify a conviction for there to be a legitimate finding of probable cause to
> justify a warrantless arrest." *United States v. Winarske*, 715 F.3d 1063, 1067
> (8th Cir. 2013).  Rather, probable cause requires that the officers involved in
> an arrest are "aware of facts establishing a fair probability" that the person
> being arrested has committed a criminal offense. *United States v. Figueroa-
> Serrano*, 971 F.3d 806, 812 (8th Cir. 2020) (cleaned up).

*Walz v. Randall*, 2 F.4th 1091, 1100 (8th Cir. 2021) (citation omitted).  Moreover,

"[a]rguable probable cause exists even where an officer mistakenly arrests a suspect

believing it is based in probable cause if the mistake is 'objectively reasonable.'"  *See*

*Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011) (citation omitted).

Here, Defendants arrested Plaintiff believing he violated Minnesota Statutes

Section 609.713, which provides in relevant part:

> **Threaten violence; intent to terrorize.** Whoever threatens, directly  or
> indirectly, to commit any crime of violence with purpose to terrorize another
> or to cause evacuation of a building, place of assembly, vehicle or facility of
> public transportation or otherwise to cause serious public inconvenience, **or
> in a reckless disregard of the risk of causing such terror** or inconvenience
> may be sentenced to imprisonment for not more than five years or to payment
> of a fine of not more than $10,000, or both.

Minn. Stat. § 609.713, subd. 1 (2014) (emphasis added and in original).  A threat, as used

in the statute, "'is a declaration of an intention to injure another or [her] property by some

unlawful act.'"  *Avendano v. Holder*, 770 F.3d 731, 733 (8th Cir. 2014) (alteration in

original) (quoting S*tate v. Schweppe*, 306 Minn. 395, 237 N.W.2d 609, 613 (1975)). A

physical act considered in context, even unaccompanied by an oral or written

communication, can communicate a terroristic threat within the meaning of Minn. Stat.

§ 609.713, subd. 1. *See State v. Wilcox*, No. C8-00-1787, 2001 WL 506817, at *3 (Minn.

Ct. App. May 15, 2001). For the purposes of Section 609.713, courts view alleged

threats, words, or phrases "in the context in which they are used," where "the question of

whether a given statement is a threat turns on whether the communication in its context

would have a reasonable tendency to create apprehension that its originator will act

according to its tenor." *See Schweppe*, 237 N.W.2d at 613 (cleaned up).

That said, the terroristic-threats statute is not intended "to authorize grave

sanctions against the kind of verbal threat which expresses transitory anger which lacks

the intent to terrorize." *See State v. Smith*, 825 N.W.2d 131, 137 (Minn. Ct. App. 2012)

(emphasis omitted) (quoting *State v. Jones*, 451 N.W.2d 55, 63 (Minn. Ct. App. 1990)).

A victim's reaction to the threat is circumstantial evidence relevant to the element of

intent of the defendant in making the threat. *See Schweppe*, 237 N.W.2d at 614. For the

purposes of "reckless disregard of the risk of causing such terror" under § 609.713,

recklessness requires that "the violent threat in conscious disregard of a substantial and

unjustifiable risk that her words or conduct will cause extreme fear." *See State v.

Mrozinski*, 971 N.W.2d 233, 238-39 (Minn. 2022).

Here, the Court finds that given the available facts and the totality of

circumstances, the Deputies were aware of facts establishing a fair probability that

Plaintiff had intended to terrorize Stanek and his family or at least acted in reckless

disregard of the risk of causing such terror.  As set forth previously, the Deputies spoke with Stanek's wife, who stated that she had arrived at her home at about 5:00 p.m. when she heard a banging at her front door and when she went outside through her garage observed Stanek at the front door.  (Dkt. 49 ¶¶ 4-5.)  Plaintiff stated that he needed to speak with Stanek.  (Dkt. 49 ¶¶ 4-5.)  After Ms. Stanek told Plaintiff that Stanek was not available, she asked Plaintiff to leave and informed him that their residence was private property.  (*Id.* ¶ 6.)  Plaintiff stated, "I'm waiting here" and recorded their conversation on his cellular phone.  (*Id.*)  Plaintiff then began speaking in a rambling manner about a number of topics which he believed Stanek was responsible for, including Plaintiff's sister being raped and marijuana.  (*Id.* ¶ 7.)  Plaintiff stated that he was holding "them" responsible for nothing being done about his sister's rape.  (*Id.*)  Ms. Stanek believed Plaintiff was speaking directly to her and intended to hold her family responsible for his grievances.  (*Id.*)  She was afraid for the safety of herself and her daughter who also lives at the residence.  (*Id.* ¶ 9; Dkt 50 ¶ 3.)  Plaintiff's manner changed quickly from calm to irate and his speech was very aggressive, repeatedly saying he was not going to leave and would wait at the residence for Sherriff Stanek to arrive.  (Dkt. 49 ¶ 9.)  Ms. Stanek stated that she became very afraid as Plaintiff was not leaving but continuing to stand at her door, saying he would wait for Stanek, as Plaintiff's voice escalated as he explained why he was so upset with Stanek, saying that Stanek ruined his life.  (*Id.* ¶ 10.)  After Ms. Stanek finally convinced Plaintiff to leave, she quickly went into her home and locked the doors as she felt threatened and afraid.  (*Id.* ¶¶ 8, 11.)

In other words, Plaintiff came to the Staneks' home uninvited, banged on the front door, refused to leave the private property when asked, and made assertions that he intended to hold the Stanek family responsible for Plaintiff's sister's rape and ruining his life (a threat that is not transitory in nature) while acting in an angry, escalating, and aggressive manner that caused Ms. Stanek to fear for her safety and feel threatened.[5] (*See* Dkt. 49 ¶¶ 7-11.)  The context of the statements made by Plaintiff and his actions gave the Deputies at least arguable probable cause to reasonably believe that Plaintiff had violated Section 609.713, thereby entitling them to qualified immunity as to Plaintiff's First Amendment Retaliation claim.  *See Allen v. Monico*, 27 F.4th 1372, 1376 (8th Cir. 2022) ("A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'") (cleaned up); *see also Rozycki v. City of Champlin*, No. CV 15-589 (JRT/FLN), 2016 WL 7493619, at *6 (D. Minn. Dec. 30, 2016) (quoting *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013), quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)) ("While the probable cause standard gives law enforcement 'room for reasonable mistakes,' the qualified immunity standard for a warrantless arrest claim, 'affords law enforcement officials an even wider berth for mistaken judgments 'by protecting all but the plainly incompetent or those who knowingly violate the law.'")

---

[5]    Ms. Stanek's statements, as reported by the Deputies, may contain inadmissible hearsay.  However, "if a party fails to challenge hearsay evidence submitted to the court, the court does not commit error in considering such evidence."  *Walker v. Wayne Cty., Iowa*, 850 F.2d 433, 435 (8th Cir. 1988).  Evenstad did not challenge the admissibility of the Deputies' Declarations (or otherwise respond to the Motion), so the Court does not address whether the Deputies Declarations contain inadmissible hearsay.

Therefore, Defendants' Motion for Summary Judgment should be granted as to Plaintiff's First Amendment retaliation claim.

**2.      Fifth Amendment Due Process Claim**

Evenstad makes conclusory assertions in his Complaint that the Deputies' conduct also violated his right to due process of the law.  (Dkt. 1 at 1, 8.)  Defendants argue that summary judgement on the Fifth Amendment due process claim should be granted on the grounds that the due process clause only applies to the federal government defendants. (Dkt. 48 at 14-15.)  Indeed, "[t]he Fifth Amendment only applies to actions taken by the federal government."  *Labeau v. Sorenson*, No. 18-cv-651 (NEB/LIB), 2019 WL 7284109, at *5 (D. Minn. Dec. 19, 2019) (citing *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010)).  None of the County Defendants were federal governmental actors during the operative events (Dkt. 49 ¶ 2; Dkt. 50 ¶ 2), and thus the Court recommends granting summary judgment to the extent Plaintiff asserts Fifth Amendment claims against county Defendants Deputies Kasparek and Marshall in their individual capacities, as the claims fail as a matter of law.

**B.      Defendants' Motion to Dismiss for Lack of Prosecution**

Defendants argue in the alternative that they are entitled to dismissal with prejudice of Plaintiff's case for his failure to prosecute, specifically for failing to take steps toward prosecuting beyond filing the Complaint and asking the Court to have counsel appointed to represent him; failing to serve Rule 26(a)(1) disclosures by May 20, 2021 as required by this Court's pretrial scheduling order; and failing to respond to Defendants' discovery.  (Dkt. 48 at 17.)  Defendants argue they were severely prejudiced

by Plaintiff's failure to respond to discovery, but do not explain why, if they were so

prejudiced, they did not move to compel discovery responses and disclosures.  Instead,

Defendants chose to take no action and now ask the Court to dismiss Plaintiff's action

with prejudice on Rule 41 grounds.  To be clear, the Court does not condone Plaintiff's

failure to respond to discovery or otherwise participate in the lawsuit he filed.  But given

that Defendants never sought relief from the Court before filing this Motion, and cited no

case where a court dismissed a lawsuit under these circumstances, the Court declines to

recommend dismissal on this additional basis.

## V.    RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED THAT**:

1.    Defendants' Motion to for Summary Judgement or in the alternative

Motion to Dismiss for Lack of Prosecution (Dkt. 46) be **GRANTED** with respect to their

motion for summary judgment;

2.    Plaintiff's First and Fifth Amendment claims against Defendants Deputy

Lisa Kasparek and Deputy Jeffrey Marshall in their individual capacities be

**DISMISSED WITH PREJUDICE**; and

3.    Judgement be entered accordingly.

Dated: December 27, 2022            *s/Elizabeth Cowan Wright*
                                     ELIZABETH COWAN WRIGHT
                                     United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).